IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**NORMAN JASON DAVIS, JR.,**                    04-CV-143-BR

        Plaintiff,                    OPINION AND ORDER

v.

**KURT HOLLINGSWORTH, Administrator,
and DR. G. SALTZBERG, Chief
Medical Officer,**

        Defendants.


**NORMAN JASON DAVIS, JR.**
#65697-06
Taft Correctional Institution
Unit -A3C
PO Box 7001
Taft, CA 93268

        Plaintiff, *Pro Se*


1 - OPINION AND ORDER

**KARIN J. IMMERGUT**
United States Attorney
**HERBERT C. SUNDBY**
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1026

Attorneys for Defendants

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion for Summary Judgment (#29). For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DISMISSES** this matter.

## BACKGROUND

Plaintiff Norman Jason Davis, Jr., was transferred to the Federal Correctional Institution at Sheridan (FCI Sheridan) on March 13, 2002. On May 28, 2002, physician's assistant (PA) Frederick Durr and Arthur Tolentino, M.D., saw Plaintiff for an injury to his left hand. The injury occurred April 28, 2002. Howard Schiele, M.D., a radiologist, found Plaintiff's "left hand is unremarkable except for tiny calcification adjacent to the bone of the 5th metacarpal" and recommended a follow-up exam if Plaintiff's symptoms persisted. On May 31, 2002, Plaintiff had another x-ray of his left hand, which revealed a fracture to Plaintiff's fifth metacarpal. A splint was placed on Plaintiff's

2 - OPINION AND ORDER

left hand and wrist.

On June 5, 2002, Plaintiff reported reinjuring his left hand when he fell against his bed. A registered nurse told Plaintiff to ice, rest, elevate, and wrap his hand. On June 6, 2002, Plaintiff reported reinjuring his left hand again when he fell against his toilet. Nurse Massie instructed Plaintiff to continue using Tylenol and to ice and to splint his hand. Nurse Massie also scheduled Plaintiff for an x-ray.

On June 7, 2002, an x-ray again was taken of Plaintiff's left hand. Christopher Blake, M.D., reviewed the x-ray and concluded Plaintiff's left hand was fractured and required surgical repair. Defendant Dr. G. Saltzberg, M.D., prescribed Tylenol 3 and advised Plaintiff to keep his left hand padded and protected.

On July 11, 2002, PA Rolando Balsamo examined Plaintiff and determined his surgical wound was infected. PA Balsamo prescribed antibiotics and instructed Plaintiff on the proper care of his hand. On July 13, 2002, Nurse J. Vickroy changed Plaintiff's dressing, applied antibiotic ointment, and instructed Plaintiff on the proper care for his wound.

On July 20, 2002, PA Durr saw Plaintiff and determined Plaintiff's surgical pin was protruding from his hand. PA Durr prescribed Tylenol 3 and instructed Plaintiff on how to care for his hand.

3 - OPINION AND ORDER

On July 29, 2002, PA D.L. Delisle reported Plaintiff's wound was healing well.  PA Delisle concluded further treatment was not required even though Plaintiff's surgical pin pulled out of his hand when Plaintiff removed his splint.

On August 8, 2002, PA Ed Jocson saw Plaintiff and reported Plaintiff's wound was healed and his range of motion was good. Plaintiff stated he was ready to work and requested clearance to do so.  PA Jocson ordered an x-ray and referred Plaintiff to Dr. Bolosan.  Dr. Bolosan determined Plaintiff needed more rehabilitation before he could return to work.

On August 14, 2002, Dr. Bolosan reported Plaintiff's left hand was healed and Plaintiff was not experiencing problems.  On August 20, 2002, Plaintiff complained about pain in his left hand to PA Jocson.  PA Jocson prescribed Tylenol.

Between September 11, 2002, and December 4, 2002, Plaintiff saw various medical staff, but he did not complain about problems with his left hand.  On December 10, 2002, however, Plaintiff complained about left-hand pain.  PA Delisle ordered an x-ray. On  December 27, 2002, PA Delisle saw Plaintiff again, but Plaintiff did not complain about left-hand pain at that time.  On January 9, 2003, Plaintiff complained about left-hand pain to

Dr. Tolentino, who prescribed medication and issued a wrist splint to Plaintiff.  On January 28, 2003, Plaintiff complained again about left-hand pain to Dr. Tolentino, who then prescribed

more pain medication.

On April 21, 2003, Plaintiff saw PA Delisle and stated he wanted his hand "rebroken and straightened." PA Delisle's notes indicate he planned to refer Plaintiff to an orthopedist, but the record does not reflect that he did so. Plaintiff was seen numerous times by medical personnel after April 21, 2003, but he did not complain about his left hand.

On December 3, 2004, Plaintiff reported to PA Durr that he "jammed his fingers on [his] left hand." PA Durr noted the injury was "old and must be addressed @ place of destination" because Plaintiff was due to transfer out of FCI Sheridan. On December 7, 10, and 21, 2004, Plaintiff complained to PA Durr about pain in his left hand and wrist and requested stronger medication. PA Durr informed Plaintiff that he was already taking the strongest medication available at FCI Sheridan and advised he would have to seek treatment at his new facility. Plaintiff was transferred out of FCI Sheridan in January 2005.

On January 30, 2004, Plaintiff filed a Complaint in this Court in which he alleged Defendants Kurt Hollingsworth, Jail Administrator of FCI Sheridan, and Dr. Saltzberg were indifferent to his medical needs in violation of his Eighth Amendment right to be free of cruel and unusual punishment. On October 31, 2005, Defendants filed a Motion for Summary Judgment.

**STANDARDS**

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*. A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer,*

*Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

**DISCUSSION**

I.  **Civil Rights Actions under *Bivens* Generally**

In *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), the Supreme Court held "victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right."  *Carlson v. Green*, 446 U.S. 14, 18 (1980).  A *Bivens* action may be brought only against the responsible federal official in his individual capacity.  *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987).  *Bivens*, however, does not authorize an action against the government or its agencies for monetary relief.  *Federal Deposit Ins. Corp. v. Meyer*, 114 S. Ct. 996, 1005-06 (1994).

In addition, a *Bivens* action cannot be premised on *respondeat superior* liability.  *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991).  Supervisory employees are not vicariously liable for the actions of subordinates "[s]ince the allegedly negligent lower level employees are not the 'employees' or 'agents' of the defendants, but 'both are fellow servants of the

7 - OPINION AND ORDER

[United States], an immune governmental agency.'" *Sportique Fashions, Inc. v. Sullivan*, 597 F.2d 664, 666 (9th Cir. 1979) (quoting *Boettger v. Moore*, 483 F.2d 86, 87 (9th Cir. 1973)). Individuals without personal involvement or participation in the alleged unconstitutional acts should be dismissed from *Bivens* actions. See *Rizzo v. Goode*, 423 U.S. 362 (1976).[1]

## II. Defendant Kurt Hollingsworth

Defendant Hollingsworth is the Jail Administrator for FCI Sheridan. He is not a medical professional and is not involved in medical treatment or decisions.

In his Complaint and Response to Defendants' Motion, Plaintiff has not alleged any facts that establish Hollingsworth had any personal involvement in Plaintiff's medical treatment. In the absence of some personal involvement by Hollingsworth, he cannot be held liable under *Bivens*. See *Terrell*, 935 at 1018. Accordingly, the Court grants Hollingsworth's Motion for Summary Judgment. See *Richards v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988)(dismissal is proper in the absence of "specific factual allegations showing the defendants' participation in the alleged [constitutional violation].").

## III. Defendant Dr. G. Saltzberg

---

[1] Although *Rizzo* was an action under 42 U.S.C. § 1983, actions under *Bivens* are identical to those brought under § 1983 "save for the replacement of a state actor under § 1983 with a federal actor under *Bivens*." *VanStrum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991).

Although Plaintiff does not make any specific allegations against Dr. Saltzberg, Plaintiff's medical record reflects Dr. Saltzberg treated Plaintiff for his complaints of hand pain on one occasion in June 2002. The Court assumes the Plaintiff intends to bring his claim against Dr. Saltzberg, and, therefore, the Court considered its sufficiency accordingly.

Deliberate indifference to serious medical needs presents a cognizable claim for violation of the Eighth Amendment proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). *See also McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992). A determination of "deliberate indifference" involves an examination of two elements: (1) the seriousness of the prisoner's medical needs and (2) the nature of the defendant's response to that need. *McGuckin*, 974 F.2d at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id*. (citing *Estelle*, 429 U.S. at 104). Examples of instances when a prisoner has a "serious" need for medical treatment include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial

9 - OPINION AND ORDER

pain. *Id*. at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A plaintiff must meet certain minimum requirements before he can establish a defendant's deliberate indifference: (1) a purposeful act or failure to act by the defendant (*i.e.*, the defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need) and (2) the denial must have been harmful. *Id*. *See also Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Such indifference may be established by showing that prison officials denied, delayed, or intentionally interfered with medical treatment or it may be established by showing inadequacies in the way in which prison officials provided medical care. *McGuckin*, 974 F.2d at 1062 (delay of seven months in providing medical care during which medical condition was left virtually untreated and plaintiff was forced to endure "unnecessary pain" sufficient to present colorable § 1983 claim). *See also Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988); *Hunt v. Dental Dep't*, 865 F.2d 198 (9th Cir. 1989)(delay of three months in providing dentures to inmate suffering serious dental problems showed more than an isolated occurrence of neglect and supports a conclusion that the delay was deliberate).

Here Plaintiff has not established he did not receive medical care for his hand when he requested it or that the care

10 - OPINION AND ORDER

he received was constitutionally deficient. The undisputed facts establish the medical staff at FCI Sheridan saw Plaintiff and treated his hand injury by examining, x-raying, splinting, and otherwise treating Plaintiff at least seventeen times during his time at FCI Sheridan. The record also reflects Plaintiff was seen by FCI Sheridan medical staff within a reasonable time after each request for medical care and Plaintiff's hand injury was thoroughly addressed by the medical staff.

In any event, Plaintiff fails to present any evidence that Dr. Saltzberg was deliberately indifferent to Plaintiff's serious medical needs. Even if the treatment of Plaintiff's hand injury rose to the level of inadequacy sufficient to prevail on his claim, Plaintiff has not presented any evidence that Dr. Saltzberg purposefully ignored or failed to respond to Plaintiff's pain or medical need.

Based on this record, the Court grants Defendants' Motion for Summary Judgment.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (#29). Accordingly, the Court **DISMISSES** this

matter.

     IT IS SO ORDERED.

     DATED this 23rd day of February, 2006.

                                /s/ Anna J. Brown

                                ANNA J. BROWN
                                United States District Judge